LOTTINGER, Judge.
Defendant was indefinitely suspended from his position as police lieutenant for the Jefferson Parish Levee District on March 6, 1981. The basis of the suspension was that defendant allegedly discharged his firearm into a telephone book within the Jefferson Parish Levee District substation located in Kenner, Louisiana.
On March 6, 1981, defendant was ordered to submit to a lie detector test administered by Goodwin and Associates. Upon appearing at the offices of Goodwin and Associates, defendant was asked to sign a release form purporting to release Goodwin and Associates, the Jefferson Parish Levee District and I.C. Villanueva, Chief of Police, from any liability resulting from taking the examination. Defendant refused to sign the release but made it known to the examiner that he was willing to take the examination if the signing of the release was waived. The examiner refused to administer the exam without having the release signed by defendant. Defendant returned to the police chief’s office where he was indefinitely suspended by I.C. Villan-ueva. The verbal suspension was con *27 firmed later by a letter which stated the cause of the suspension being that defendant had discharged a firearm within the Jefferson Levee District substation.
Defendant was again requested to submit to a polygraph examination.upon the release being signed by the Jefferson Levee District. Defendant agreed to take the examination under the condition that the presence of his attorney be allowed during the examination. The examination was scheduled for March 20, 1981, however, on March 19 defendant’s attorney cancelled the appointment. The examination was rescheduled for March 26, 1981, but again was cancelled. A letter was then sent by I.C. Villanueva requesting that defendant attend the appointment set for March 26, 1981. Defendant did not appear. Defendant filed a timely notice of appeal to review the indefinite suspension. Additionally, by letter dated April 7, 1981, Lanza was advised of his immediate termination. As cause for the termination, Lanza was charged with: 1) discharging a firearm in the substation on February 2, 1981; 2) refusing to cooperate with the Department’s investigation regarding the incident; and 3) refusing Chief Villanueva’s direct order to take a polygraph examination in furtherance of the investigation. Separately, Lan-za timely gave notice of his appeal of his termination.
Both appeals were consolidated for hearing before a commissioner appointed by the Civil Service Commission. The Commission reviewed the evidence and ordered Lanza reinstated with back pay from the date of the suspension subject to an offset in favor of the Jefferson Levee District for any wages earned by Lanza during the period of his suspension and termination. From this ruling, the District has appealed.
In a single assignment of error the Levee District questions whether the Civil Service Commission correctly concluded that defendant in fact agreed to take the polygraph examination and that his later refusal was based upon a legitimate refusal to sign a release agreement.
The Levee District argues that defendant unreasonably refused to submit to a polygraph examination, even though he had been ordered to appear by I.C. Villanueva in writing. The Levee District argues that it did all that was within its powers to have defendant comply with the scheduling and rescheduling of the polygraph examination.
A careful review of the facts reveals that defendant was scheduled to appear for a polygraph examination at the offices of Goodwin and Associates on March 6, 1981. Defendant appeared as scheduled. He then refused to co-operate in the examination only because he would be forced to sign not only a release in favor of Goodwin and Associates, but also in favor of the Jefferson Levee District and I.C. Villanueva.
Although it has been recognized that a police department may require a police employee to submit to a polygraph examination, the rule is not unqualified. Creadeur v. Department of Public Safety, 364 So.2d 155 (La.App. 1st Cir.1978). In that case this court stated:
The eases recognize, however, that the rule is not unqualified and is subject to the exception that an officer is not required to submit to such an order which is unreasonable or when legitimate reason exists for refusal to obey such an order.
We view the refusal to sign the release agreement as a legitimate exercise of defendant’s rights. Reasoning otherwise would in effect force defendant to give up his right of civil suit against the Jefferson Levee District and Chief Villanueva. It should also be noted that the initial visit to the polygraph examiner’s office did not result in a completed examination because defendant refused to take the examination. Defendant merely refused to sign the release, but steadfastly stated that he was willing to take the examination if his signing of the release was dispensed with. Thereafter, the decision not to give the examination was the decision of Goodwin and Associates.
*28 After the decision was made by Goodwin and Associates not to allow defendant to take the polygraph examination defendant returned to his duty where he was subsequently notified that he was being placed on indefinite suspension. Defendant was told the reason for the suspension was that he discharged a firearm within the confines of the substation. Defendant was then directed to surrender his commission and badge and ordered to remove his belongings from the substation. Defendant was notified of his suspension in writing on March 9, 1981. Again the reason given for the suspension was not related to the failure to take the polygraph examination, but instead was based on an accusation of his discharging the firearm in the substation.
Any request to appear for the polygraph examination after March 9, 1981, was after defendant had been placed on indefinite suspension, having been accused of discharging the firearm in the substation. At this point the investigation into the matter ceased and an accusing finger was pointed at defendant. Defendant during this time period was suspended to the extent that he could not be held amenable for failure to perform the duty required of a police officer.
A police officer placed in this situation should naturally be allowed to deal with his accuser at arm’s length. Therefore, defendant’s refusal to submit to polygraph examination scheduled for March 26, 1981 was also justified.
Por the above and foregoing reasons the judgment of the Civil Service Commission is affirmed at plaintiff-appellant’s costs.
AFFIRMED.